

Samuel J. Lieberman, Esq.
Sadis & Goldberg LLP
551 Fifth Avenue, 21st Floor
New York, NY 10176
Phone: 212.573.8164
slieberman@sadis.com

September 18, 2023

**BY ECF**
The Honorable Lewis J. Liman
U.S. District Court, Southern District of New York
500 Pearl Street, Room 1620
New York, NY 10007

Re:     *Rimu Capital Ltd. v. Ader et al.*, No. 23-CV-05065 (LJL)

Dear Judge Liman:

I write on behalf of Defendants, and for intervenor 26 Capital Acquisition Corp. ("SPAC") (together "26 Capital") under Your Honor's Individual Practices ¶ 1(C), to move for (i) SPAC to intervene in this action under Rule 24(a); and (ii) a limited protective order against discovery from the Milbank LLP firm of 26 Capital's irrelevant information that was produced and identified as an exhibit in the Delaware Action 26 Capital Acquisition Corp[]. v. Tiger Report Asia Ltd., C.A. No. 2023-0128-JTL (Del. Ch.) (the "Delaware Action").  26 Capital seeks a limited protective order against the production of 30-40% of the 1,638 trial "exhibits" in in the Delaware Action (Dkt. 32-2 (Subpoena), which *both* (i) 26 Capital produced or contain 26 Capital's information; and (ii) do not mention Rimu, its investment, nor any transfer of the money invested by Rimu.  26 Capital's motions should be granted, because the Delaware Action barely involved Rimu – which is mentioned only four times in the entire 71-page Delaware Opinion, (Dkt. 32-1 at 29-30, 70).  Specifically:

- The SPAC has standing to intervene under Rule 24(a), because it has "an interest relating to the property" subject to the Milbank Subpoena.  *Am. Lung Ass'n v. Reilly*, 962 F. 2d 268, 261 (2d Cir. 1992).  The SPAC also has an interest because this dispute focuses on the sale of an interest in the SPACs "Class B Shares (Founder Shares) and Private Placement Warrants" (Compl. ¶ 90.)  A party may intervene to address "discovery of their records held by third part[ies]."  *In re Klein*, 2022 WL 1567584, at *3 (S.D.N.Y. May 18, 2022).

- The SPAC and Defendants also have standing to challenge the Milbank Subpoena because they infringe on Defendants "privacy rights" in the documents, because the Subpoena seeks Defendants' "unrelated financial and business dealings in detail, even though" the documents are, at least in part, "a matter of public record" by being sent to the Delaware Action judge as trial exhibits in that action.  *Chemical Bank v. Dana*, 149 F.R.D. 11, 13 (D. Conn. 1993).

- 26 Capital's argument that it retains at least a limited privacy right in the Delaware Action trial exhibits is reinforced by the fact that the trial exhibits they have not been filed on the docket in that case.  Instead, a copy of the exhibits was provided to the Vice Chancellor (Ex. 1, Delaware Dkt. No. 296), and the joint exhibit list itself was filed confidentially (*id*. 282).

- The Court should reasonably tailor the production of Delaware Action exhibits to documents relating to the "contested issues" in the Complaint.  *Chemical Bank*, 149 F.R.D. at 13.  Thus, the Court should reject discovery of documents unrelated to the Complaint's claims here.

**A.** **The Delaware Action Covers Detailed Financial Negotiations and Transactions That Are Separate from Rimu's Investment and Claims**

The Delaware Action exhibits consist of 1,638 trial exhibits, many of which do not have any relationship to the Complaint filed by Plaintiffs here.  The Rimu Complaint focuses entirely on Defendants' alleged inducement of Plaintiff's investment on "November 30, 2021" and Mr. Ader's alleged receipt of a "distribution" of all of Rimu's "$25 million" "within days" after Rimu's investment.  (Compl. ¶¶ 83-89.)  The remaining allegations allege that Defendants delayed in providing answers to Plaintiff's questions 2022 and early 2023.  (*Id.* ¶¶ 90-126.)

In contrast, the Delaware Action has covered a broad and wide set of facts that did not involve Rimu at all.  For example, the Delaware Action involves exhibits covering the following set of facts that are not part of the claims in the current action:

- Initial, per-merger contacts between the SPAC and its merger target, Okada Manila, and its parent company "Universal" from March 201 through June 2021.  (Dkt. 32-2 at 14-18.)

- Negotiation of the SPAC-Okada Manila merger agreement from August through October 15, 2021.  (*Id.* at 20-24.)

- The progress towards closing of the SPAC-Okada Manilla deal between December 2021 and April 2022.  (*Id.* at 25-31.)

- The SPAC and Okada Manilla's discussions about a violent takeover of the Okada Manilla casino on May 31, 2022, and the aftermath in June 2022.  (*Id.* at 32-35.)

- Discussions regarding the SPAC and Defendants' business strategies for addressing the violent takeover, addressing financing and closing issues, and attempting to close the transaction in a difficult business environment.  (*Id.* at 41-51.)

Defendants have attempted in good faith to balance Plaintiff's desire for reasonable discovery with the fact that the Delaware Action addressed many issues that are irrelevant here.  Defendants proposed to Plaintiffs a production of roughly 70% of the joint exhibits, while holding back around 30% because of privacy and relevance concerns.  (Ex. 2).)

Defendants provided a highlighted version of the confidential joint exhibit list to Plaintiff, and sought to negotiate the parties' differences.  (Ex. 3.)  Defendants hereby move to file Exhibit 3 under seal, as a confidentially-filed document—under seal—in the Delaware Action.  (*See* Ex. 1, at dkt. 282.)  But Plaintiff refused, demanding all Delaware Action exhibits.  (Ex. 2 at 1.)

**B.** **26 Capital Has a Privacy Interest in the Discovery Sought – Because its Documents are Being Demanded  - and the Court Should Limited Discovery to Relevant Documents**

The Court should grant the protective order based on 26 Capital's interest in the discovery south, and the fact that many of the exhibits from the Delaware Action are plainly not relevant here.  *First*, The SPAC has standing to intervene and contest discovery under Rule 24(a), because it

has "an interest relating to the property" subject to the Milbank Subpoena.  *Am. Lung Ass'n v. Reilly*, 962 F. 2d 268, 261 (2d Cir. 1992).  A party may intervene to address "discovery of their records held by third part[ies]."  *In re Klein*, 2022 WL 1567584, at *3 (S.D.N.Y. May 18, 2022).  In *Klein*, this Court granted a motion to intervene by a party where, the request for discovery "seeks discovery of [the intervenor's records held by third-party financial institutions."  *Id.*  The Court held that because the intervenor had "an interest in the property" in the evidence "that is subject to this proceeding … their motion to intervene is granted.  *Id.*  The SPAC's motion to intervene should be granted under *Klein*.

*Second*, 26 Capital – both the SPAC and the Defendants here – have standing based on their "privacy rights" in their detailed financial dealings with Okada Manila/Universal, and in their business and investment strategies in managing the deal process.  *Chemical Bank*, 149 F.R.D. 11, at 13.  In *Chemical Bank* is instructive, the plaintiff issued a non-party subpoena that sought "easy access to [the defendant's] unrelated financial and business dealings in detail" that were "already a matter of public record." *Id.*  Specifically, almost all of the "subpoenaed documents ha[d] been filed with a court or market as exhibits."  *Id.*  Nevertheless, the Court held that the subpoena "might infringe on certain privacy rights" and held that the defendant "has standing to contest the subpoena." *Id.*  Chemical Bank is directly on point, and should govern here.

*Third*, the Court should apply *Chemical Bank*'s reasoning and "limit[] discovery from the subpoena[] to material that pertain[s] to acts specified in the complaint."  *Id.*  The *Chemical Bank* court limited the subpoena to documents relating to the "contested issues" in the case at hand.  *Id.*  Here, the contested issues are: (i) the alleged inducement of Rimu's investment; (ii) the disclaimers and disclosures to Rimu in making its investment, including Rimu's disclaimer of reliance on any information or advice from Defendants; and (iii) the distribution of Rimu's investment out of 26 Capital Holdings, LLC, allegedly to Defendant Ader and others.  The Delaware Action exhibits that relate to these issues should be produced – but there is no good reason to expand the production of such exhibits beyond the reasonable scope of the Complaint.

*Finally*, the Court should tailor discovery to address the fact that the "Term Sheet and Fee Agreement" that Plaintiff relied upon to avoid a stay of discovery does not provide for any fees to Defendants arising from Rimu's investment in 26 Capital Holdings.  The Term Sheet and Fee Agreement is clear that it merely provides for "the rollover of certain investment management fees" from a prior investment (in Playtech) "***and the exclusion of all other fees with respect to the Investor's Investment in the Company and the SPAC***."  (Dkt. 28-3 at 2 (emphasis added.)  Specifically, Rimu's "investment management fee payable to SpringOwl" for "Investor's investment in Playtech PLC" was "crystallized (finalized) in the amount of $800,000 (the Rollover Amount)."  Id. at 3.  Thus, the only "fee" referenced in the Term Sheet and Fee Agreement is the Playtech investment fee, which was fixed at $800,000.   No other fees were charged.

Instead, the $800,000 fee that Rimu owed SpringOwl was invested by SpringOwl into 26 Capital Holdings, LLC at the same time as Rimu.  Rimu put in $24.2 million, and SpringOwl applied its $800,000 Playtech fee that it was owed by Rimu.  From that point forward, there was no fee charged.   Rather, SpringOwl's $800,000 would "be increased" or "reduced" in the same "proportion" as the return on Rimu's investment.  (*Id.*)  This reinforces concerns about this Court's subject matter jurisdiction – and is another reason to limit discovery to relevant documents.

Respectfully submitted,

*/s/ Samuel J. Lieberman*
Samuel J. Lieberman

**BY ECF:**  All counsel of record