# LACHTMANCOHEN P.C.

245 Main Street, Suite 230
White Plains, New York 10601
(914) 505-6654

www.lcpclaw.com

GREGORY A. BLUE
OF COUNSEL
Admitted in NY, NJ, CA
gblue@lcpclaw.com

September 19, 2023

**VIA ECF**
Hon. Lewis J. Liman
United States District Court
Southern District of New York
500 Pearl Street, Room 1620
New York, New York 10007

**Re:** *Rimu Capital Ltd v. Ader et al.* | Case No.: 1:23-cv-05065-LJL

Dear Judge Liman:

Plaintiff Rimu Capital Ltd. ("Rimu") respectfully submits that the Motion for a Protective Order [Dkt. 39] filed by Defendants and 26 Capital Acquisition Corp. ("SPAC", collectively "Movants") should be denied for the following reasons:

1. *Movants lack standing.* "As a general matter, only recipients of a subpoena have standing to seek a protective order quashing or modifying the subpoena." *City of Almaty v. Ablyazov*, No. 1:15-CV-05345 (AJN) (KHP), 2020 U.S. Dist. LEXIS 40407, at *3-4, 2020 WL 1130670 (S.D.N.Y. Mar. 9, 2020) (collecting cases). To establish standing, Movants have the burden of demonstrating that they have "a privilege, privacy or proprietary interest in the documents sought." *Id*. at *4 (collecting cases). "A party's general desire to thwart disclosure of information by a non-party is simply not an interest sufficient to create standing." *Chevron Corp. v. Donziger*, 325 F. Supp. 3d 371, 387 (S.D.N.Y. 2018) (quoting *US Bank Nat'l Ass'n v. PHL Variable Ins. Co.*, No. 12-cv-6811 (CM)(JCF), 2012 U.S. Dist. LEXIS 158448, 2012 WL 5395249, at *2 (S.D.N.Y. Nov. 5, 2012) (Francis, M.J.). And, while Movants argue that the Joint Trial Exhibits are not relevant to this action, "[a] party lacks standing to challenge subpoenas issued to non-parties on the grounds of relevancy or undue burden. *Universitas Educ., LLC v. Nova Grp., Inc.*, 2013 U.S. Dist. LEXIS 1720, at *16, 2013 WL 57892 (S.D.N.Y. Jan. 4, 2013).[1] As discussed below, Movants have no "privilege, privacy or proprietary interest" in the Joint Trial Exhibits, and therefore cannot establish that they have standing.

---

[1] In any event, the scope of the subpoena is limited. Of the tens of thousands of documents exchanged in the Delaware Action, the Joint Trial Exhibits represent the small fraction that the parties to that case determined were directly relevant. The allegations in the Delaware Action are referenced repeatedly in the Complaint and the outcome of the Delaware trial essentially sealed the loss of Rimu's $25 million. The reasons for that loss are directly relevant here.

2. *The Joint Trial Exhibits are "in the public record."* The Stipulated Protective Order in the Delaware Action [Exh. 1, "Delaware Protective Order"] provides that, "[i]n the event that any Confidential or Highly Confidential Discovery Material is used in open court during any court proceeding *or lodged as a trial exhibit*, the material shall lose its confidential status *and become part of the public record*, unless the Producing Party applies for and obtains an order from this Court specifically maintaining the confidential status of particular material." [Exh. 1 at p. 21, ¶ 25 (emphasis added)]. The Joint Trial Exhibits were lodged as trial exhibits and therefore are "part of the public record."[2]

3. *There is a strong common law and Constitutional interest weighing against shielding those documents from disclosure.* Because the Joint Trial Exhibits are "part of the public record," there is a strong common law and constitutional right to access those documents, regardless of privacy or confidentiality interests that may have previously existed. *Nixon v. Warner Commc'ns*, 435 U.S. 589, 597 (1978) ("[T]he courts of this country recognize a general right to inspect and copy public records and documents."). "The notion that the public should have access to the proceedings and documents of courts is integral to our system of government." *United States v. Erie Cty.*, 763 F.3d 235, 238-39 (2d Cir. 2014). And, while it is true that "[e]very court has supervisory power over its own records and files, and access has been denied where court files might have become a vehicle for improper purposes," *Nixon*, 435 U.S. at 598, the Chancery Court, through the Delaware Protective Order, already has exercised "supervisory power over its own records and files" and, in doing so, has determined that the Joint Trial Exhibits would "lose [their] confidential status and become part of the public record." [Exh. 1 at p. 21, ¶ 25.].

4. *Movants waived any claim of "personal right or privilege."* Movants waived any claim of personal right or privilege in the Joint Trial Exhibits in at least five ways: (i) With knowledge of the Delaware Protective Order, Movants lodged the Joint Trial Exhibits without seeking further protection. (ii) Movants lodged the Joint Trial Exhibits with knowledge of the very strong presumption of public access to court documents. (iii) Movants used, and permitted to be used, Joint Trial Exhibits in open court.[3] *See In re von Bulow*, 828 F.2d 94, 103 (2d Cir. 1987) ("Matters actually disclosed in public lose their privileged status because they obviously are no longer confidential."). (iv) Prior to the Milbank Subpoena response deadline, Milbank repeatedly asked Defendants to explain if they had any confidentiality-based objection to the subpoena but Defendants never once stated that they did. (v) Defendants failed to move to quash or for a protective order before the response date.

5. *Movants have not shown "good cause."* "The Court may issue a protective order only if 'good cause' is shown by the moving party. 'Good cause' is established when it is specifically demonstrated that disclosure will cause a clearly defined and serious injury." *Chevron*, 325 F. Supp. 3d at 387. Movants have not identified a "clearly defined and serious injury" that would result from production of the Joint Trial Exhibits to Plaintiff, nor can they. The SPAC is a

---

[2] Defendants have not claimed that any "Producing Party" has applied for, much less obtained, an order from the Chancery Court "specifically maintaining the confidential status of particular material."

[3] A staff member of this firm was present in the courtroom for the trial, heard the exhibits discussed, and was able to view them on a screen. Defendants never asked to exclude members of the public from the trial nor sought to protect those exhibits from display to the public.

blank check company that offers no products or services so there is no risk of competitive harm. Since late 2021, the SPAC's only business has been to attempt a business combination with the defendants in the Delaware Action. To the extent that the documents reflect negotiations and deliberations about the proposed business combination, there no longer is any risk from disclosure because the Joint Trail Exhibits already have been disclosed to SPAC's merger counterparties, who are the only parties that could have used them to the competitive or business detriment of the Movants. Significantly, even with respect to the very few documents cited in the motion, Movants offer no explanation as to how disclosure of those documents to Rimu would cause any clearly defined and specific injury. "[A] conclusory assertion that the subpoenas seek documents that are 'private, confidential, and commercially sensitive'" is insufficient to create standing. *Universitas Educ., LLC v. Nova Grp., Inc.*, at *17.

6. *Production of the full set of Joint Trial Exhibits is consistent with the Federal Rules.* A party issuing a subpoena "must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Rule 45(d)(1). Production of the set of Joint Trial Exhibits, easily identified and duplicated, imposes a negligible burden on Milbank. By contrast, requesting only a subset of those documents based on categorical descriptions that, in Defendants' view, are directly relevant to this case, would require Milbank to review and analyze each one of the Joint Trial Exhibits to determine relevance and responsiveness to particular requests. Doing so would impose an "undue burden or expense" on Milbank because there is a much more efficient and economical way to produce the documents, *i.e.* simply produce the Joint Trial Exhibits.

7. *Movants' legitimate interests, if any, could have been, and still can be, addressed with a protective order*. Defendants have consistently refused to discuss, let alone enter into, a stipulated confidentiality order. On July 26, during our Rule 26(f) conference, I raised the issue of entering into a stipulated confidentiality agreement. On August 28, I emailed Defendants' counsel that, "[w]hen and if we receive documents responsive to the subpoenas we will keep them confidential pending the execution of a formal confidentiality stipulation and entry of an order." Defendants did not respond to that offer. On August 30, 2023, I sent to Defendants' counsel Your Honor's form confidentiality stipulation, executed by me, and invited them to "countersign it and return it [so that] we can get it filed and so-ordered straight away." Defendants' counsel did not respond to that offer either. If Defendants had a genuine interest in protecting confidentiality, rather than in delaying and obstructing production, they would not have so persistently ignored our repeated offers to enter into a standard confidentiality agreement.

For these reasons, the Motion should be denied.[4]

---

[4] Movants' final point seeks to reargue this Court's decision on Defendants' Motion for a Stay of Discovery, in which this Court set the scope of discovery pending resolution of Defendants' Motion to Dismiss. Movants' request that this Court reconsider the scope of discovery is procedurally improper and substantively without merit.

**LACHTMAN COHEN** P.C.

Hon. Lewis J. Liman
September 19, 2023
Page 4 of 4

                                    Respectfully submitted,

                                  **LACHTMAN COHEN P.C.**

                                    */s/ Gregory A. Blue*

                                  Gregory A. Blue (GB-9569)

cc:    All Counsel of Record (Via ECF)