UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RIMU CAPITAL, LTD.,<br><br>Plaintiff,<br>and<br><br>26 CAPITAL HOLDINGS, LLC,<br><br>Nominal Plaintiff,<br><br>v.<br><br>JASON ADER, SPRINGOWL ASSET MANAGEMENT LLC, SPRINGOWL ASSOCIATES LLC, ADER FUND MANAGEMENT LLC, SPRINGOWL SPECIAL OPPORTUNITIES, LP, 826 CAPITAL HOLDINGS LLC, SADIS & GOLDBERG, LLP, ROBERT D. CROMWELL, RON S. GEFFNER, and PAMELA ADER,<br><br>Defendants. | Civil Docket Case #: 1:23-cv-05065-LJL |

**DECLARATION OF JASON ADER**

I, JASON ADER, declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, as follows:

1. I am the Defendant in the above-captioned action. I am the Managing Member of SpringOwl Asset Management LLC ("SpringOwl AM"), a Defendant in this action. I submit this Declaration in Support of the Ader Defendants; Motion to Dismiss the Second Amended and Supplemental Complaint ("SASC").

2. I have personal knowledge of the facts set forth herein, and if called as a witness, I could and would testify competently to them.

*Background and Investment History with RIMU Capital*

3. I have been in the investment management business for over 25 years, with significant experience in the gaming and hospitality sectors.

4. I first met Harald McPike, the billionaire investor who operates through a family office based in the Bahamas.

5. Prior to the 26 Capital transaction at issue in this litigation, Mr. McPike, through RIMU, had successfully invested with me on two prior occasions. In these two prior investments, RIMU invested approximately $25, million in total.

6. The second of these investments involved Playtech PLC, a publicly traded company in the United Kingdom. For that investment, SpringOwl Associates LLC served as an investment advisor to RIMU pursuant to an Investment Management Agreement.

7. These two prior investments were extraordinarily successful for RIMU. Based on my information and belief they generated approximately $75 million in returns for RIMU, representing a $50 million profit for RIMU's $25 million investment.

8. As a result of the Playtech investment, I, through Ader Fund Management LLC ("AFM"), earned approximately $1 million in advisory fees, of which approximately $800,000.00 remained outstanding at the time of the 26 Capital transaction.

*The 26 Capital Transaction and Co-Investment Structure*

9. In late 2021, I presented RIMU with an opportunity to invest in 26 Capital Holdings LLC ("Sponsor"), which sponsored a Special Purpose Acquisition Company

("SPAC") that was pursuing a business combination with the owners of the Okada Manila Resort & Casino.

10. Unlike the previous Playtech investment, neither I nor any of the Ader Defendants served as investment advisors to RIMU on the 26 Capital transaction. Instead, we explicitly co-invested alongside RIMU.

11. On or about November 30, 2021, RIMU entered into a Subscription Agreement with Sponsor to purchase a membership interest in Sponsor. A true and correct copy of the executed Subscription Agreement is attached hereto as ***Exhibit "A."***

12. Pursuant to this Agreement, RIMU contributed $24.2 million in new capital, while I, through SpringOwl AM, rolled over $800,000.00 in legitimately earned advisory fees from the prior Playtech transaction. These advisory fees were fees that RIMU already owed to AFM.

13. I made the decision to roll over these fees and place them at risk based on my high conviction and confidence in the transaction's success. Rather than collecting these fees outright, to which I was contractually entitled, I chose to subject them to the same risks as RIMU's capital.

14. This co-investment structure was documented in the Term Sheet & Fee Agreement dated November 30, 2021, which expressly provided that SpringOwl AM would place "the entire $800,000.00 at risk." A true and correct copy of the executed Term Sheet & Fee Agreement is attached hereto as ***Exhibit "B."***

15. The $25 million total investment ($24,2 million from RIMU, plus $800,000.00 from SpringOwl AM) purchased membership interests in Sponsor, consisting of 2,500,00

unites at $10 per unit, with each comprising economic interests in one Founder Share and one Private Placement Warrant.

*Transparency of Transaction Structure and Disclosure*

16. The transaction was structured as a secondary purchase of existing interests from Sponsor, as is common in SPAC sponsor investments. This structure was clear to RIMU through the transaction documents, including a detailed cap table.

17. Prior to RIMU's investment, I provided RIMU with the Amended and Restated Limited Liability Company Operating Agreement of Sponsor dated July 12, 2021. A true and correct copy of this Operating Agreement is attached hereto as ***Exhibit "C."***

18. The ticker symbol of the SPAC on NASDAQ was "ADER," making my role as the Sponsor's managing member unmistakably clear to all market participants.

19. In the 2022 10-K filing of 26 Capital Acquisition Corp., we provided extraordinarily detailed disclosures about Sponsor's ownership structure, exceeding SEC requirements.

*Non-Reliance Provisions and Risk Disclosures*

20. The Subscription Agreement contained explicit non-reliance provisions and risk disclosures detailed in Schedule 1 and Schedule 2, clearly outlining RIMU's knowledge and acceptance of all relevant risks.

*Transfer of Control to RIMU and Universal Litigation*

21. Unfortunately, the anticipated business combination between 26 Capital Acquisition Corp. and the owners of the Okada Manila Resort & Casino ultimately did not succeed, primarily due to circumstances entirely beyond our control.

22. Despite this setback, the SPAC successfully negotiated an $11 million settlement with Universal, partially offsetting losses from the unsuccessful transaction.

23. On January 12, 2024, as part of a comprehensive Settlement Agreement with RIMU—and as a clear demonstration of my continued good faith—I voluntarily resigned as Managing Member of Sponsor, explicitly acknowledging RIMU's authority to appoint a successor. RIMU immediately appointed itself as the replacement, obtaining exclusive managerial control.

24. By voluntarily transferring control, we empowered RIMU with complete authority over Sponsor, including full access to all books and records, litigation strategy against Universal, pursuit of additional recovery beyond the $11 million settlement, and comprehensive decision-making power.

25. Had I, or the Ader Defendants, harbored any fraudulent intent, it would be inconceivable to voluntarily relinquish managerial control to the allegedly defrauded entity. Our voluntary transfer conclusively demonstrates transparency, honesty, and good faith.

26. Rather than collaborating constructively, RIMU filed this lawsuit during the critical trial phase of 26 Capita Acquisition Corp.'s ongoing litigation against Universal, potentially weakening Sponsor's litigation posture and undermining recovery prospects.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on 10/09/2025, 2025

J. Nathaniel Ader

JASON ADER