SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK: COMMERCIAL DIVISION PART 03M

-----------------------------------------------------------------X

PAMELA B. ADER, as executor of the estate of Richard H. Ader,

                          Plaintiff,

- v -

JASON ADER, JS PROPERTY HOLDINGS LLC,

                          Defendants.

-----------------------------------------------------------------X

| INDEX NO. | 653917/2024 |
| MOTION DATE | 07/03/2025 |
| MOTION SEQ. NO. | 004 |

**DECISION + ORDER ON MOTION**

HON. JOEL M. COHEN:

The following e-filed documents, listed by NYSCEF document number (Motion 004) 120, 121, 122, 123, 124, 133, 134, 136, 166, 169

were read on this motion for                   SANCTIONS

      This case adds yet another unfortunate chapter to the story of artificial intelligence misuse in the legal profession. Here, Defendants' counsel not only included an AI-hallucinated citation and quotations in the summary judgment brief that led to the filing of this motion for sanctions, but also included multiple new AI-hallucinated citations and quotations *in Defendants' brief opposing this motion*. In other words, counsel relied upon unvetted AI — in his telling, via inadequately supervised colleagues — to defend his use of unvetted AI.

      Plaintiff Pamela Ader, as executor of the estate of her late husband, Richard Ader ("Richard"), seeks sanctions against Defendants JS Property Holdings, LLC and her son, Jason Ader ("Jason") as well as Defendants' counsel. For the reasons discussed below, and as stated on the record following oral argument on September 24, 2025 (NYSCEF 169), Plaintiff's motion is **granted**.

653917/2024   ADER, PAMELA B. vs. ADER, JASON ET AL                                    Page 1 of 9
Motion No. 004

1 of 9

## FACTS

The factual background of this case is set forth in the Court's decision granting Plaintiff's motion for summary judgment (NYSCEF 136 ["SJ Decision"]). In a nutshell, Richard agreed to guarantee a $13 million loan to Jason secured by Jason's Upper East Side townhouse in exchange for Jason's promise to repay Richard if Richard had to make payments pursuant to the guarantee. After Richard's death, Jason defaulted on the loan and thereafter refused to repay his father's estate for its losses under the guarantee as promised. In opposition to Plaintiff's summary judgment motion, Defendants raised a myriad of excuses for his failure to repay the debt or compensate the estate, all of which were rejected on the merits (*id.*).

As relevant here, Plaintiff contends that Defendants made several misrepresentations in their brief opposing her motion for summary judgment, including that Defendants had "diligently pursued discovery" when in fact they had not made a single discovery request in this action and that Plaintiff had violated a court order in Jason's matrimonial case. The Court discussed these issues in the SJ Decision (*id.* at 4, 14-15) and finds that only the representation regarding discovery requests constituted a misrepresentation of fact.

More significantly, Plaintiff also identified inaccurate citations and quotations in Defendants' opposition brief that appeared to be "hallucinated" by an AI tool (NYSCEF 71 ["SJ Opposition"]). After Plaintiff brought this issue to the Court's attention (NYSCEF 92-93), Defendants submitted a surreply affirmation in which their counsel, without admitting or denying the use of AI, "acknowledge[d] that several passages were inadvertently enclosed in quotation" and "clarif[ied] that these passages were intended as paraphrases or summarized statements of the legal principles established in the cited authorities" (NYSCEF 95 ["Surreply Affirmation"] ¶ 3). Plaintiff then submitted a letter in rebuttal to the Surreply Affirmation, to

653917/2024  ADER, PAMELA B. vs. ADER, JASON ET AL
Motion No. 004
Page 2 of 9

2 of 9

which the Court invited Defendants to respond (NYSCEF 105 ["Rebuttal Letter"]). Defendants did not respond.

As set forth in detail in the Rebuttal Letter and the papers in support of the instant motion, defense counsel's explanation of the citation and quotation errors as innocuous paraphrases of accurate legal principles does not hold water. Among other things, the purported "paraphrases" included bracketed terms to indicate departure from a quotation (not something one would expect to see in an intended paraphrase) and comments such as "citation omitted." Moreover, the cited cases often did not stand for the propositions quoted, were completely unrelated in subject matter, and in one instance did not exist at all.

Even as to the subset of fake quotations that happened to be arguably correct statements of law, "the court rejects the invitation to consider that actual authorities stand for the proposition that bogus authorities were offered to support" (*Johnson v Dunn*, 2025 WL 2086116, at *16 [ND Ala, July 23, 2025, 2:21-CV-1701-AMM]). Use of fake citations and quotations that may *generally* support "real" statements of law is no less frivolous. Indeed, when a fake case is used to support an uncontroversial statement of law, opposing counsel and courts—which rely on the candor and veracity of counsel —in many instances would have no reason to doubt that the case exists. The proliferation of unvetted AI use thus creates the risk that a fake citation may make its way into a judicial decision, forcing courts to expend their limited time and resources to avoid such a result.

Unfortunately, the summary judgment briefing is not the end of the troubling conduct. Despite previously assuring the Court in defense counsel's Surreply Affirmation during the summary judgment briefing that "[e]very effort will be made to avoid the recurrence of such issues and to maintain the clarity and integrity of the submissions before this Court" (NYSCEF

653917/2024  ADER, PAMELA B. vs. ADER, JASON ET AL  Page 3 of 9
Motion No. 004

3 of 9

95 ¶ 12), Defendants' opposition to this sanctions motion contains another wave of fake citations and quotations. This time, Plaintiff has identified *more than double* the number of mis-cites, including four citations that do not exist, seven quotations that do not exist in the cited cases, and three that do not support the propositions for which they are offered (NYSCEF 134 at 9). Separately, although not the subject of this motion, Plaintiff has also alerted the Court of still more fake citations in Defendants' opposition to Plaintiff's application seeking attorneys' fees in connection with the award of summary judgment (*see* NYSCEF 166 [correspondence from Plaintiff's counsel]).

In response to the overwhelming evidence skillfully marshalled by Plaintiff's counsel in the instant motion, Defendants "vehemently den[ied] the use of unvetted AI" and complained that "Plaintiff provides no affidavit, forensic analysis, or admission from Defendants confirming the use of generative AI" (NYSCEF 133 at 12) thus implicitly suggesting that AI was *not* used in preparing Defendants' summary judgment brief. At oral argument, the Court gave defense counsel the opportunity to set the record straight as to how exactly the many citation and quotation "errors" found their way into Defendants' briefs in this action (NYSCEF 169 [Tr. 09.24.25] at 7-8). Defendants' counsel began with a prepared statement in which he acknowledged "some citation errors," but continued initially to maintain that "the cases are not fabricated at all" (*id*. at 9).

Ultimately, however, upon questioning by the Court as to how a non-existent citation could possibly end up in the summary judgment briefing without the use of AI, counsel conceded that he "did use AI," contending that he "did verify and check the AI" but "must have missed" the false citation, which he conceded (for the first time) was an AI hallucination (*id*. at 9-10). With respect to incorrect quotations from actual cases, counsel acknowledged (also for the first

653917/2024  ADER, PAMELA B. vs. ADER, JASON ET AL                                        Page 4 of 9
Motion No. 004

4 of 9

time), under Court questioning, that they were not his own drafted "paraphrases" from the decisions but were instead AI-generated fake quotations that were not properly verified (*id.* at 12-14).

Turning to the inclusion of AI-generated false citations and quotations in Defendants' brief opposing the instant motion for sanctions, counsel began by indicating that he viewed the sanctions motion "as a minimal matter" relative to the other time-sensitive tasks on which he and his recently hired staff were working at the time (*id.* at 14). Ultimately, counsel conceded that a number of incorrect citations were AI-generated and not properly checked by lawyers he brought in to assist him (*id.* at 14-20). Indeed, he indicated that he *identified* at least one of the hallucinated citations during the drafting process and instructed his team to remove it from the brief, which they failed to do (*id.* at 15). In the end, it is undisputed that counsel signed a brief that contained the identified hallucination among several others.

Counsel expressed remorse for what occurred in this case, and at some points took responsibility (*see e.g., id.* at 15 ["[the false citation] was not removed. I take full responsibility for it being in this brief, and it had to be AI-generated. I believe it was"]; 17-18 ["I just want to explain my actions. And, obviously, some of this is sanctionable and extremely embarrassing and humiliating. I want to explain that I brought on additional staff because of the complexity of both of these matters. I was assured that all the quotations were 100 percent accurate. I went through the table of contents in each case to make sure they actually existed. I learned only after receiving the reply from opposing counsel that, in fact, there were inaccuracies"; 19 ["And, your Honor, when I say I told the staff, I take full responsibility. It's my staff, so I told myself to get rid of it and I did not get rid of it"]; 20-21 ["Your Honor, I am extremely upset that this could even happen. I don't really have an excuse. Here is what I could say. I literally checked to make

653917/2024 ADER, PAMELA B. vs. ADER, JASON ET AL
Motion No. 004

Page 5 of 9

5 of 9

sure all these cases existed. Then, you know, I brought in additional staff. And knowing it was for the sanctions, I said that this is the issue. We can't have this. Then they wrote the opposition with me. And like I said, I looked at the cases, looked at everything; so all the quotes as I'm looking at the brief -- and I thought it was a well put together brief. So I looked at the quotes and was assured every single quote was in every single case, but I did not verify every single quote …. When I looked at -- when I went back and asked them, because I looked at their [reply brief] last week preparing for this for the first time, and I asked them what happened? How is this even possible because, you know, when you read the opposition, I mean, it's demoralizing. It doesn't even seem like, you know, this is humanly possible"]).

On the other hand, counsel later muddled those statements of contrition by asserting: "I just want to clarify that I never said I didn't use AI. I said that I didn't use unvetted AI. I just want to be clear that I believe that I had checked everything. Number two, I did say that they were intended to paraphrase because in that rush of six days [to file the summary judgment brief] we made the decision that, hey, if this approximates this case, then let's remove the quotes. It's a paraphrase. Number three, retaliation was the reason for the immediate non-contrition. I thought, again, that the 800-lawyer firm [representing Plaintiff] was upset that I made a motion to have them relieved as counsel. I just wanted to point that out" (*id*. at 34), to which the Court responded: "I'm not sure how that helps anything. The idea of unvetted AI, it sort [of] speaks for itself. If you are including citations that don't exist, there's only one explanation for that. It's that AI gave you cites and you didn't check them. That's the definition of unvetted AI. I don't know

653917/2024  ADER, PAMELA B. vs. ADER, JASON ET AL
Motion No.  004

Page 6 of 9

6 of 9

how you can vehemently deny that when the evidence is staring us all in the face. That denial is still very troubling to me" (*id.* at 34-35).[1]

## DISCUSSION

The Court may award sanctions for frivolous conduct against a party and/or an attorney in its discretion where appropriate (22 NYCRR § 130-1.1). Moreover, Rule 3.3 of the New York Rules of Professional Conduct ("Conduct Before a Tribunal") provides that a lawyer "shall not knowingly make a false statement of fact or law to a tribunal[.]" (NY ST RPC Rule 3.3). Finally, 22 NYCRR § 100.3(D)(2) provides that "[a] judge who receives information indicating a substantial likelihood that a lawyer has committed a substantial violation of the Rules of Professional Conduct (22 NYCRR Part 1200) shall take appropriate action."

Use of AI is not the problem *per se*. The problem arises when attorneys abdicate their responsibility to ensure their factual and legal representations to the Court – even if originally sourced from AI – are *accurate*. "The court relies on attorneys to do their jobs: advocate for their clients using law and facts—real law and real facts" (*Enterprise v Shvo*, NYSCEF 154 in Index No. 653221/2024 [Sup Ct, NY County, Dec. 24, 2024] [Masley, J.]). When attorneys fail to check their work—whether AI-generated or not—they prejudice their clients and do a disservice

---

[1] The troubling denial to which the Court referred is on page 12 of Defendants' brief in opposition to the instant sanctions motion and extends beyond the use of "unvetted" AI to suggest that AI was not used at all (NYSCEF 133): "Plaintiff's speculation that Defendants' brief was generated using 'unvetted artificial intelligence ('AI') application' is purely speculative, unsupported by any evidence, and intended solely to cast Defendants' counsel in a negative light without factual basis. Defendants vehemently deny the use of unvetted AI. The errors, as explained, were human errors resulting from time constraints and the inadvertent misapplication of quotation marks to paraphrased content. ***Notably, Plaintiff provides no affidavit, forensic analysis, or admission from Defendants confirming the use of generative AI,*** nor do they show that any citation or quote was submitted with the knowledge that it was false. Absent such proof, accusations of bad faith or knowing deception fall flat under Rules of Professional Conduct Rule 3.3(a)(1)" (emphasis added).

653917/2024   ADER, PAMELA B. vs. ADER, JASON ET AL
Motion No. 004
Page 7 of 9

7 of 9

to the Court and the profession. In sum, counsel's duty of candor to the Court cannot be delegated to a software program.

By now the risks and consequences of AI-hallucinated citations should be familiar (*see e.g. Park v Kim*, 91 F 4th 610, 615-16 [2d Cir 2024] [attorney referred to court's grievance panel for disciplinary proceedings for submitting brief containing non-existent case citations generated by ChatGPT and case was dismissed]; *Mata v Avianca, Inc.*, 678 F Supp 3d 443, 466 [SD NY 2023] [attorneys ordered to pay a penalty and to send copies of sanctions petition to client and each judge falsely identified as authors of fake opinions]; *Enterprise v Shvo, supra* [ordering attorney to reimburse movants for fees incurred in communications regarding improper AI use]; *Matter of Samuel*, 82 Misc 3d 616, 620 [Surr Ct, Kings County 2024] [affirmation brief struck from the record]). Moreover, courts have made clear that reliance on the research of others is not a valid excuse for presenting false citations (*Johnson*, 2025 WL 2086116, at *20 (citing cases)).

Here, Plaintiff seeks her attorney's fees and costs and out-of-pocket expenses incurred by the delay in adjudicating her summary judgment motion as a sanction against Defendants for frivolous conduct. The Court finds that awarding Plaintiff her reasonable costs and attorney's fees incurred in connection with the sanctions motion, together with such fees attributable to addressing Defendants' unvetted AI citations and quotations in the summary judgment motion, is an appropriate monetary sanction against both Defendants and their counsel, jointly and severally.

In addition, in view of the reporting mandate of 22 NYCRR § 100.3(D)(2) and to deter such conduct going forward (*see Johnson*, 2025 WL 2086116, at *20), the Court directs Plaintiff's counsel to submit a copy of this decision and order to the Grievance Committee for the Appellate Division, First Department and the New Jersey Office of Attorney Ethics, copying

653917/2024  ADER, PAMELA B. vs. ADER, JASON ET AL                Page 8 of 9
Motion No. 004

8 of 9

Defendants' counsel and this Court on its transmittal letters. The Court will provide a copy of this decision and order to Judge Katz, who is presiding over a matrimonial matter in this Court in which Defendants' counsel is representing Jason Ader (NYSCEF 169 at 23).

Therefore, it is

**ORDERED** that Plaintiff's motion for sanctions pursuant to 22 NYCRR § 130-1.1 is **GRANTED**, such that Defendants and their counsel are jointly and severally liable to compensate Plaintiff for her reasonable costs and attorney's fees incurred in connection with this motion, together with fees and costs attributable to addressing Defendants' unvetted AI citations and quotations in the summary judgment motion; it is further

**ORDERED** that Plaintiff shall submit an application with supporting documentation for the fees awarded above within fourteen (14) days of the date of this order; Defendants and their counsel may submit opposition thereto within fourteen (14) days of Plaintiff's application. Plaintiff shall notify the Court via letter filing on NYSCEF and by email when the application is complete and whether it is opposed or unopposed; and it is further

**ORDERED** that Plaintiff's counsel promptly submit a copy of this decision and order to the Grievance Committee for the Appellate Division, First Department and the New Jersey Office of Attorney Ethics, copying defense counsel and this Court on its transmittal letters.

This constitutes the decision and order of the Court.

10/1/2025
DATE

JOEL M. COHEN, J.S.C.

| CHECK ONE: | | CASE DISPOSED | | X | NON-FINAL DISPOSITION | | |
|---|---|---|---|---|---|---|---|
| | X | GRANTED | | DENIED | | GRANTED IN PART | | OTHER |
| APPLICATION: | | SETTLE ORDER | | | SUBMIT ORDER | | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | | FIDUCIARY APPOINTMENT | | REFERENCE |

653917/2024 ADER, PAMELA B. vs. ADER, JASON ET AL
Motion No. 004

Page 9 of 9