UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

RIMU CAPITAL LTD.,

Plaintiff,

v. 23 Civ. 5065 (LJL)

ADER, et al.,

Defendant.

------------------------------x

New York, N.Y.
October 21, 2025
11:00 a.m.

Before:

HON. LEWIS J. LIMAN,

District Judge

APPEARANCES

LACHTMAN COHEN & BELOWICH LLP
Attorneys for Plaintiff Rimu Capital
BY: GREGORY A. BLUE

HOWARD BENJAMIN
Attorney for Defendants Ader, et al.

(Case called)

THE DEPUTY CLERK: Starting with counsel for plaintiff, please state your appearance for the record.

MR. BLUE: Good morning, your Honor.

Greg Blue for plaintiff Rimu Capital Limited.

THE COURT: Good morning, Mr. Blue.

MR. BENJAMIN: Good morning, your Honor.

Howard Benjamin on behalf of the defendants.

THE COURT: Good morning, Mr. Benjamin.

All right. Mr. Blue, let's start with you. Tell me what relief you're seeking.

MR. BLUE: Your Honor, the current request for a conference started with a discovery dispute in this matter, which is that the defendants have never produced any documents in response to our discovery requests. There was a court-ordered deadline of September 30 to produce documents. When we didn't receive anything or any communication from Mr. Benjamin by that deadline, we reached out and attempted to meet and confer.

What Mr. Benjamin told us for the first time was that none of his clients had any documents at all. We believed that that was both not credible and awfully late in the day to tell us that. The deadline was set in mid July, I believe it was July 15, but Mr. Benjamin told me that he needed two and a half months to review and produce documents because of his personal

and professional commitments. We acceded to that request and then got nothing.

My question to Mr. Benjamin at the time of our meet and confer was, if you had no documents, you could have told us that in July rather than waiting two and a half months to tell us you had no documents. And the other thing, as we put in our letter, your Honor, is that the evidence from other cases that Mr. Ader is involved in, that they are produced volumes of ESI.

So I suppose at this point, your Honor, we have a preliminary question of, are there documents and do they exist to be searched in some way, and if not, then what do we do about it?

That's on the discovery. The other matter --

THE COURT: You framed that as a question, but usually lawyers make requests.

MR. BLUE: Yes. I think that I would request your Honor to issue a clear order directing the defendants to produce all documents responsive to our requests by a date certain or to explain under oath why no such documents exist.

THE COURT: OK. There were other issues you wanted to bring to my attention.

MR. BLUE: The other issue that I think has been -- that I know has been brought to your Honor's attention is the issue of this motion to dismiss that was filed with citations that we could not locate and identify. That motion has been

withdrawn.

To the extent that your Honor wants any additional color from us on that, I personally checked all of those citations and quotations and prepared that chart that was submitted to your Honor in connection with that.

I said in my last letter, which was filed yesterday to the court, about a representation concerning the production of documents that we feel we had an obligation to bring to the court's attention. I'm sorry to circle back to the discovery issue, your Honor.

There was a representation made in the letter to the court that Mr. Ader produce a large volume of documents to Rimu Capital from the Delaware Chancery Court delegation. I was counsel to removal in that litigation. No documents were produced at all.

As we said in our letter yesterday, we served a subpoena on Mr. Ader's former counsel in Delaware to produce to us any documents that they had produced to us in Delaware, and Mr. Ader's Delaware counsel responded that of course there were no such documents that were produced.

THE COURT: Well, so are you seeking any relief in connection with the motion to dismiss that was filed and has since been withdrawn?

MR. BLUE: I would like leave, to the extent it's required, to request a motion for sanctions, your Honor.

THE COURT: OK. And can you also refresh me as to the status of the case with respect to Mr. Ader and the Ader defendants?

I know I dismissed some parties from this case.

MR. BLUE: Yes.

THE COURT: But I could not frankly recall whether Mr. Ader and the Ader defendants have answered the operative complaints and where things stand with respect to bringing this to a conclusion.

MR. BLUE: Yes, your Honor.

Ader defendants answered the operative complaint. There was an initial answer filed, you may recall, which was a general denial. We brought that to the court's attention, and the court directed the Ader defendants to either stand on that or amend.

They amended their answer to answer with particularity. All of the allegations there was an answer, there was a discovery plan, there are discovery deadlines. There has never been a motion to dismiss by any of the Ader defendants until the recently filed and withdrawn motion to dismiss.

THE COURT: I gather the way to understand that motion withdrawn would be not as a 12(b) motion because the complaint has been answered, but something closer to a 12(c) motion for judgment.

MR. BLUE: Yes, your Honor.

And there are cases, as you're well aware, where an erroneously filed 12(b) motion, the court could treat it as a 12(c) motion. We think under the circumstances of this case, your Honor, it would be equitable to allow us to run discovery to conclusion, because this is what the parties agreed to in July and what the court ordered in July when the court requested what the parties needed to do to bring this to conclusion. We concur and agreed what was necessary was the completion of discovery.

THE COURT: And you're now requesting an extension of discovery to November 21, is that correct?

MR. BLUE: That was pending what happens here, your Honor. Yes, obviously I would much prefer to have documents from Mr. Ader before depositions or a certification that they are searched for and not been able to locate any documents.

Now, your Honor, the most recent correspondence suggests that the documents are available, but we need to subpoena them from a third party in Massachusetts. If we need to do that, we're going to need time to serve a subpoena, get a response to a subpoena, and review those documents before Mr. Ader's deposition.

THE COURT: So I assume that you're going to serve that subpoena at least as a protective measure, leaving that aside, maybe factoring that in, how much time -- and assuming

that I order Mr. Ader and the Ader defendants to respond to the plaintiff's document requests in this case.

How much time after the date by which I set for the response would you request that discovery be brought to a close?

MR. BLUE: I think I'll need 30 days from getting a response. Although, your Honor, I think rather than from the response, it may be I need to build a little bit of time for that subpoena. Since we're in mid October, I would say end of the year.

THE COURT: Is that for end of all discovery or just fact discovery?

MR. BLUE: That would be the end of fact discovery. We may in this case request the opportunity to submit an expert report, so I would want to be able to serve an expert report. I think we had that date trailing by about 15 days from the close of fact discovery.

THE COURT: All right. Let me hear from you Mr. Benjamin.

MR. BENJAMIN: Thank you, your Honor.

First, I have no objection to your Honor issuing a clear order for the production of documents or a sworn statement explaining why there has not been a production of documents.

Just briefly, Mr. Ader --

THE COURT: And how much time do you want for that?

MR. BENJAMIN: Whatever Mr. Blue needs, I consent to.

THE COURT: Well, you know, my order is going to impose upon you and your clients the obligation to make a reasonably diligent search for documents in your client's possession, custody, or control. I emphasize all three words because the words are different and they, you know, impose different obligations.

So I don't think you want me to say do it by tomorrow because --

MR. BENJAMIN: I'm sorry, your Honor.

THE COURT: So how much time do you need for your reasonably diligent search?

MR. BENJAMIN: I would say 30 days, your Honor.

THE COURT: OK.

MR. BENJAMIN: Adding on to what Mr. Blue said, if we could do an end date of at least mid January, because I'm going to be out of the country the last two weeks of December.

THE COURT: OK. Do you want to give me an explanation for the motion to dismiss that you filed?

MR. BENJAMIN: Absolutely, your Honor.

Mr. Ader provided me with research that I was informed was done by another attorney that he had previously hired. That's the research I used in connection with the motion.

Frankly, I did not check the citations, I just

believed that since another attorney had prepared it, that it was accurate. Obviously, in this day of AI, which I have never used and never will use, I should have checked it. I didn't.

As soon as I learned of the citations not being accurate, which was not until Friday around noon-ish, when I saw your Honor's filing with respect to scheduling this date and that being one of the issues, I called up my assistant -- neither one of us go to the office on Fridays -- and I directed her to do the request to withdraw.

I did not see Mr. Blue's filing on October 15 because I was engaged in the preparation and conducting of a deposition Wednesday and Thursday. If I had seen Mr. Blue's filing on the 15th, I would have filed the motion to withdraw on the 15th.

THE COURT: OK. I'm going to give Mr. Blue leave to make a motion for sanctions. I don't think he really needs leave. He could have made the motion without asking for leave.

But I'm also not going to express an opinion whether it has merit or what the sanctions are that would be available if I determine it has merit.

I will say the following to you, Mr. Benjamin. Even where counsel is local counsel in a case and the briefs are prepared by out-of-state counsel, it is incumbent upon local counsel to make sure that the citations are accurate. Or put another way, anybody who puts their name to papers takes on a responsibility with respect to those papers and, you know,

bears a risk if the papers turn out to be violative of the rules. And rules here are quite important.

As it turns out, because you withdrew the motion so quickly because Mr. Blue sent his letter so quickly, the court did not spend any time reading through the citations that you had. But I could well have, and I assume that plaintiff spent some time on it, and that is not what's expected of a lawyer appearing before this court.

You don't need to say anything to respond.

MR. BENJAMIN: I would like to say --

THE COURT: OK.

MR. BENJAMIN: -- I agree 100 percent with you, your Honor. I've been practicing law for 49 years unblemished, and obviously over the course of my career, I have made mistakes. But you're absolutely correct in connection with that motion. I should have checked those citations before filing.

Once I learned of the errors, I immediately -- even though I wasn't in my office, my secretary wasn't there either -- I made that request to withdraw, I think, within a half hour after I saw the statement in order to try to limit, you know, the damage on those citations.

THE COURT: Let me say one other thing.

MR. BENJAMIN: I'll apologize to the court, frankly, because I did not check the citations.

THE COURT: Let me say one other thing about the

motion for judgment on the pleadings. I'm not going to prevent you from filing a new motion for judgment on the pleadings or a motion for summary judgment at the right time. But what I will say to you is that it is extraordinarily unlikely that I would decide any such motion before the close of discovery, and so you might think about whether you want to save some of your client's money and save some of your time by waiting until -- and maybe acting more strategically by waiting until you can address the discovery that's in this case rather than doing something directed to pleadings may end up being superceded by the evidence.

MR. BENJAMIN: I represent to you, your Honor, and Mr. Blue that no such motion will be made until, at least, after discovery is completed.

THE COURT: OK. All right. So, Mr. Blue, what I hear from Mr. Benjamin is, you know, he wants 30 days to respond to the discovery requests, which would put this at Friday, November 21.

MR. BLUE: Just for clarification, your Honor, the deadline would be for response and production, I assume.

THE COURT: Yes.

MR. BLUE: Thank you.

THE COURT: And then mid January for close of fact discovery. I assume you have no objection to that.

MR. BLUE: No objection, your Honor.

MR. BENJAMIN: I'm sorry. I didn't hear that, your Honor.

THE COURT: He did not object, so I'm going to tell you what my order is.

MR. BENJAMIN: OK.

THE COURT: My order is that Mr. Ader and the Ader defendants serve responses to any currently pending requests for production of documents or interrogatories by November 21, 2025, and produce by that same date the documents responsive to the requests for a production of documents.

If no documents are produced, the Ader defendants are to serve upon the plaintiff a signed declaration or affidavit by Mr. Ader himself explaining what search has been done to locate the documents and why there are no documents. At that point, I'll be in a position to judge whether there was a sufficient search done.

With respect to fact discovery, fact discovery is extended so that it closes on January 23, 2026. All discovery shall close by March 2, 2026.

We'll do another conference maybe the week of March 2, 2026.

March 5, 2:00 p.m. Work for you, Mr. Blue?

MR. BLUE: Yes, your Honor.

THE COURT: And work for you, Mr. Benjamin?

MR. BENJAMIN: Yes, your Honor.

THE COURT: All right. I'll see you March 5 at 2:00 p.m.

MR. BLUE: Thank you, your Honor.

(Adjourned)