

GREGORY A. BLUE
Admitted in NY, NJ, CA

1133 Westchester Avenue, Suite N-200
White Plains, New York 10604
Tel: (914) 505-6654

11811 San Vicente Blvd., Suite 414
Los Angeles, CA 90049
Tel: (310) 424-5265

Email: gblue@lcb-law.com
www.lcb-law.com

February 19, 2026

**VIA ECF**
Hon. Lewis J. Liman
United States District Court
Southern District of New York
500 Pearl Street, Room 1620
New York, New York 10007

> **Re:    Rimu Capital Ltd. v. Ader, et al. | Case No.: 1:23-cv-05065-LJL**

Dear Judge Liman:

This firm represents Plaintiff Rimu Capital Ltd. ("Rimu"). We write pursuant to Section 4(C) of Your Honor's Individual Practices in Civil Cases to raise a discovery dispute with the Court. Before filing this letter, we attempted to meet-and-confer with Defendants' counsel concerning this dispute but, as described below, have been unable to do so.

### *Background*

As explained in Rimu's recent request for a modification of the Case Management Order [ECF No. 245], Defendants have never produced any documents in this case. Defendants claim to no longer have any responsive documents in their possession. They repeatedly represented to Rimu and the Court that that responsive documents are in the possession and control of third parties and that Rimu should subpoena those parties to obtain relevant documents. Rimu did so. With one exception, each of those third parties responded that they have no responsive documents.

This discovery dispute concerns Global Relay, the one third party that admittedly has Defendants' documents in its possession and under control, and that is willing to provide those documents to Rimu if Defendants consent.

### *Global Relay*

Defendants represented to Rimu that relevant documents could be subpoenaed from Global Relay. Specifically, on October 21, 2025, Defendants' counsel sent an email stating that "Global Relay Communications Inc is a company preserving documents relating Aldo [sic] to Spring Owl llC and 26 Capital llc. Their headquarters are located at 220 Cambie Street , Suite 500 , Vancouver , BC ,Canada V6B 2m9 but they have a US presence as Global Relay , New York , NY. Also asked Jason for account numbers or any identifying labels." [Exh. 1.] On October 23, we served a Notice of Intent to Serve Subpoenas, including a subpoena to Global

Hon. Lewis J. Liman
February 19, 2026
Page 2

Relay. [Exh. 2[1].] That same day, Defendants' counsel emailed a list of entities, including Global Relay, that purportedly had possession of responsive documents. That email stated "I received the attachment few minutes ago. It may add to your subpoenas." [Exh. 3.] Defendants thus were aware of our intention to subpoena Global Relay and invited us to do so.

Thereafter, Defendants never objected to the Global Relay subpoena on any ground, nor did they move to quash or for a protective order.

Global Relay responded to the subpoena by stating that it required "Mr. Ader's direct consent (via email is sufficient) to providing the records as set out in the Subpoena." [Exh. 4 at 3.] Global Relay also stated that Mr. Ader would be required to "clear the outstanding balance on his account" in the amount of $5,796.76, and that data export and delivery charges would total $11,025. In total, Global Relay has said that it would charge $16,821.76 to deliver the data to Rimu. [*Id*. at 4.] Global Relay also stated that, absent Defendants' consent to the release of data, Global Relay would contend that the subpoena is not valid and that it would require service of a foreign subpoena via the Hague Convention. [*Id*. at 2.]

While the parties discussed payment to Global Relay, Mr. Ader agreed to the release of data "provided that privileged emails are protected and not shared with Mr. Greg Blue and his client." [Exh. 5 at 4.] Thereafter, we attempted to negotiate a protocol to screen potentially privileged communications, offering that Mr. Ader provide a list of emails and email domains to be segregated from any Global Relay production. [*Id*.] On December 10, 2025, Mr. Ader stated that he was "willing to cooperate with the privilege-screening process," but it would take him time to do so. He further stated, "I don't understand the urgency, especially given the volume of privileged material involved." [Exh. 6.] Mr. Ader never provided such a list.[2]

On January 23, 2026, Rimu requested that the Court modify the Case Management Order for good cause to permit additional time for discovery. [ECF No. 245.] Specifically, Rimu requested "an extension to: (i) attempt to agree to a protocol for the production of documents from Global Relay or, if the parties are unable to do so, to seek an order compelling Defendants to consent to the production on specified terms; (ii) review documents produced by Global Relay; and (iii) take depositions of the non-debtor defendants." [*Id.* at 3.] Defendants consented to Rimu's request.

On January 29, 2026, the Court granted Rimu's request, finding that there was "good cause" to modify the Case Management Order. [ECF No. 246.] Among the reasons cited by the Court was the fact that "Ader agreed to assist with the release of data from non-party Global Relay but never followed through on that promise." [*Id.* at 2.] That remains true today.

---

[1]     Subpoenas unrelated to the current dispute have been removed from the copy of the notice that is attached as an exhibit.
[2]     On December 22, 2025, Mr. Ader filed a voluntary petition for relief under chapter 11 of tile 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of Florida, Case No. 25-25088-CLC. None of the other remaining Defendants filed a bankruptcy petition.

Hon. Lewis J. Liman
February 19, 2026
Page 3

On February 5, 2026, I emailed Defendants' counsel to "Please let me know as soon as possible if Jason will agree to the privilege screening process that we proposed and, if not, what you propose instead." [Exh. 7.] I received no response. On February 13, 2026, I emailed Defendants' counsel asking that he "Please give me times Monday or Tuesday [February 16 or 17] that you are available to meet-and-confer about this issue." Yesterday, I received a response from Mr. Benjamin stating only that he was "Waiting to hear back from Jason. I'm sort of in limbo right not. [sic] Have not gotten an order from the bankruptcy court regarding my status."

### *Argument*

The Global Relay documents are under Defendants' control because the Defendants have the practical ability to obtain those documents merely by granting their consent to release them. *Gruss v. Zwirn*, 296 F.R.D. 224, 230 (S.D.N.Y. 2013) ("'control' of documents does not require legal ownership or physical possession; all that is required is that the party have the right, authority, or practical ability to obtain the documents at issue.").

> Control includes the legal right of the producing party to obtain documents from another source upon demand. A party may be ordered to produce documents where that party has the legal right to obtain the documents, even though that party retains no copy, and regardless of whether the documents are beyond the jurisdiction of the court.

*M.L.C., Inc. v. N. Am. Philips Corp.*, 109 F.R.D. 134, 136 (S.D.N.Y. 1986) (citations omitted). Defendants therefore had an obligation, even without a subpoena, to obtain and produce relevant documents from Global Relay.

In all events, Defendants, who claim to have lost or destroyed every responsive document in their possession, *invited* Rimu to obtain their documents from Global Relay. It is profoundly inequitable for them to continue to obstruct Rimu's efforts to do.

Defendants have never consented to the release of the Global Relay data. They have never cooperated in negotiating a protocol to screen potentially privileged emails. They have never provided a list of emails or email domains that could be used to segregate potentially privileged emails. For that reason, we have been forced to unilaterally draft a discovery protocol for the production and review of Global Relay data, which is attached hereto. Although Defendants have not participated in the creation of this protocol, we have taken every effort to protect their legitimate interests in privilege and privacy.

### *Relief Requested*

Rimu respectfully requests that the Court issue an Order: (i) approving the proposed protocol attached to this letter; and (ii) directing Defendants to pay Global Relay for the cost of production and back amounts due as demanded by Global Relay or, if Defendants fail or refuse to pay such amounts, authorizing Rimu to advance those costs and to reserve its rights to recover them in this action.

Hon. Lewis J. Liman
February 19, 2026
Page 4

                                        Respectfully submitted,

                                        LACHTMAN COHEN & BELOWICH LLP

                                        Gregory A. Blue (GB-9569)

cc:  All Counsel of Record
     (Via ECF)

The request is GRANTED as unopposed.  *See* Dkt. No. 248.  Defendants are directed to pay Global Relay for the cost of production and back amounts due as demanded by Global Relay.  If Defendants fail or refuse to pay such amounts, Rimu is authorized to advance those costs and to reserve its rights to recover them in this action.

The Court will be way of separate order enter the proposed protocol.

SO ORDERED.

LEWIS J. LIMAN
United States District Judge

April 6, 2026